IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **BAY MANAGEMENT GROUP, LLC** <br> 6 Halbright Court <br> Timonium, Maryland 21093 <br><br> Plaintiff, <br><br> v. <br><br> **CIVIL RIGHTS DIVISION,** <br> **OFFICE OF THE ATTORNEY** <br> **GENERAL OF MARYLAND** <br> 200 St. Paul Place <br> Baltimore, Maryland 21202 <br><br> and <br><br> **ANTHONY G. BROWN,** <br> **IN HIS OFFICIAL CAPACITY AS** <br> **ATTORNEY GENERAL OF THE** <br> **STATE OF MARYLAND** <br> 200 St. Paul Place <br> Baltimore, Maryland 21202 <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> *    Case No. _____ <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT**

Plaintiff, Bay Management Group, LLC ("Plaintiff" or "BMG"), by and through its undersigned counsel, as and for its Complaint against Defendant Civil Rights Division, Office of the Attorney General of Maryland ("Defendant OAG" or the "OAG") and Defendant Anthony G. Brown, in his official capacity as Attorney General of the State of Maryland ("Defendant Brown" and together with the OAG, "Defendants," and collectively with Plaintiff, the "Parties"), states as follows:

### **INTRODUCTION**

1.  Plaintiff is a well-known and successful full-service property management

company founded and based in Baltimore, Maryland. This action arises from the issuance of an unfounded and baseless Administrative Subpoena (the "Subpoena") by Defendant OAG to Plaintiff, commanding the production of a litany of voluminous documents concerning Plaintiff's tenant screening practices, business operations, thousands of tenant applications, and tens of thousands other internal files maintained by BMG. Defendant OAG claims to have issued the Subpoena pursuant to newly-created powers granted to the OAG by the legislature in Md. Code Ann., State Gov't § 20-1040, *et seq.*, which, among other things, gives the OAG unbridled discretion to serve subpoenas upon any private entity, for any documents it wants, without limitation, and without any initial showing of needs or potential wrongdoing. The stated general and non-specific purpose of such subpoenas is "to determine whether there is reasonable cause to believe that any person committed a civil rights violation." *Id.* at § 20-1044(a).

2. Here, the OAG improperly, unlawfully, and maliciously issued the Subpoena as part of a fishing expedition, without possessing any actual evidence of a civil rights violation committed by BMG, as part of an effort to "find" *some* wrongdoing by BMG to use as leverage against it. The OAG's true purpose for issuing the Subpoena was not to investigate legitimate claims of housing discrimination, but instead to use its unlimited and unchecked investigatory powers, in direct and blatant violation of BMG's due process rights, to coerce BMG into changing its *legal* business practices to conform to Defendants' *political* and *policy* preferences.

3. By this Complaint, Plaintiff seeks an Order from this Court: (i) declaring that the unlimited subpoena and investigatory power granted by Md. Code Ann., State Gov't § 20-1044(b) is unconstitutionally vague, in violation of the Due Process Clause of the Fourteenth and Fifth Amendments to the United States Constitution; (ii) declaring that Defendants' past, present, and future use of the Subpoena Statute set forth in Md. Code Ann., State Gov't § 20-1044(b)

(hereinafter, "Subpoena Statute") violates the Due Process Clause of the Fourteenth and Fifth Amendments to the United States Constitution, both generally and as-applied to BMG; (iii) declaring that the documents and information sought in the Subpoena are not relevant to a valid investigation authorized by the Subpoena Statute; (iv) finding that Defendants are abusing their statutory investigatory powers by issuing the Subpoena to BMG to coerce it into changing its lawful business practices to conform with Defendants' political and policy preferences; (v) enjoining Defendants from enforcing the Subpoena because they lacked reasonable cause to issue the Subpoena to BMG from the outset; and (vi) enjoining Defendants from enforcing the Subpoena because the requests in the Subpoena are indefinite, overbroad, and unduly burdensome.

## PARTIES

4. Plaintiff is a limited liability company formed under the laws of the State of Maryland, with a principal address located at 6 Halbright Court, Timonium, Maryland 21093.

5. Defendant OAG is a governmental entity, with a principal address located at 200 St. Paul Place, Baltimore, Maryland 21202. Upon information and belief, the Civil Rights Division is a departments encompassed within the Office of the Attorney General of Maryland.

6. Defendant Brown is the elected Attorney General of the State of Maryland and a resident of the State of Maryland, with an address of 200 St. Paul Place, Baltimore, Maryland 21202.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this cause of action arises under the Constitution of the United States of America. Moreover, this instant action presents a case of actual controversy within the jurisdiction of this

Court seeking a declaration of the right and other legal relations of the Parties hereto and certain ancillary relief with regard to those matters hereinafter set forth, all as contemplated pursuant to the provisions of 28 U.S.C. § 2201, *et seq*.

8.  This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, under Title 28, Sections 2201 and 2202 of the United States Code, and under the All Writs Act, 28 § U.S.C. 1651.

9.  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over certain state law claims alleged in this Complaint because such claims are so related to the constitutional claims alleged in this action that they form part of the same case or controversy.

10. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Maryland.

## FACTS COMMON TO ALL COUNTS

11. Founded nearly fifteen (15) years ago, Plaintiff Bay Management Group, LLC now manages over 7,000 rental units and employs over 200 people throughout the mid-Atlantic region, making it one of the largest residential property management companies in the greater Baltimore region.

12. On or about December 2, 2024, without any notice to BMG or prior communication with its personnel, the OAG served the Subpoena upon BMG. The Subpoena commanded the production of an unlimited, vast array of BMG's tenant screening documents, internal BMG documents, tenant application, rental listings, housing advertisements, marketing materials, business practices, and correspondence with *every* tenant application for the past three

(3) years. A true and accurate copy of the Subpoena is attached hereto as **Exhibit A** and incorporated herein by reference. The Subpoena commanded production of requested documents no later than January 13, 2025.

13. The Subpoena essentially commanded the production of nearly *every* document in BMG's possession relating to its tenant application process, without any limitations whatsoever, for the past three years.

14. Prior to its issuance of the Subpoena, BMG had never received notice of *any* claims, complaints, or other potential violations of housing discrimination laws. To the contrary, BMG has at all times complied with all federal, state, and local laws regarding housing discrimination, including following guidance issued by the OAG, U.S. Department of Housing and Urban Development, and other governmental agencies.

15. In total, to comply with the incredibly overbroad and unduly burdensome Subpoena, BMG would need to expend hundreds of hours and tens of thousands of dollars, ultimately producing, in BMG's estimation, over 100,000 unique documents pertaining to more than 15,000 tenant applicants.

16. The Subpoena itself purports to be issued pursuant to the OAG's new investigative authority granted to it in October 2023 under Md. Code Ann., State Gov't § 20-1040, *et seq.*, giving OAG the broad, unchecked power to "investigate … any conduct that constitutes a civil rights violation."[1] According to the statute, if the OAG, through its investigation, determines that there is "reasonable cause to believe that a person is engaged in discrimination prohibited by the U.S. Constitution, the Maryland Constitution, or State or federal

---

[1] A "civil rights violation" means an "act of discrimination prohibited under the U.S. Constitution, the Maryland Constitution, or State or federal law." Md. Code Ann., State Gov't § 20-1040(c). It also includes any discriminatory act as defined under Md. Code Ann., State Gov't § 20-101. *Id.*

law," the OAG may commence a civil action. Md. Code Ann., State Gov't § 20-1042(a).

17. Before initiating such civil action, the OAG "shall conduct a preliminary investigation to determine whether there is reasonable cause to believe that any person committed a civil rights violation." Md. Code Ann., State Gov't § 20-1044(a).

18. According to the plain language of the statute, Defendants presumably may (as they have done here), in their sole unfettered and unqualified discretion, and in order to pursue their policy preferences and political initiatives, issue subpoenas to *any* entity, for *any* reason whatsoever or no reason at all, in order to "compel production of records, books, papers, contracts, and other documents" without any mechanism for a subpoena recipient to determine if there was even a basis to believe a violation had occurred. Md. Code Ann., State Gov't § 20-1044(b). The Subpoena Statute also grants the OAG the unchecked ability to "subpoena witness; administer oaths; [and] examinate individuals under oath," all without first having a legitimate, good faith basis to believe that a civil rights violation may have occurred. *Id.*

19. After receiving the Subpoena, BMG immediately contacted the OAG (through counsel) to ascertain the basis for the Subpoena. The OAG stonewalled BMG's counsel and refused to provide any information justifying *why* the OAG believed there may have been a potential civil rights violation committed by BMG, only demanding that BMG produce hundreds of thousands of pages of internal BMG documents simply because the OAG has the unlimited right to issue the Subpoena under the Subpoena Statute, without any mechanism to verify whether it was issued in good faith.

20. On or about January 14, 2025, BMG's counsel met virtually with representatives from the OAG. During that meeting, the OAG stated that Defendants were concerned with BMG's tenants screening practices as they relate to BMG's use of criminal background checks;

6

specifically, the OAG believed that BMG had used the phrase "clean criminal background check" in the "tenant requirements" section of certain rental listings, a phrase that the OAG unilaterally determined to be unlawful because it could "deter" persons with criminal convictions from applying for housing from BMG-managed properties.[2] BMG denied the allegation without equivocation.

21. At all times, the OAG has been asked to identify how the use of such language would violate civil rights laws because persons with criminal convictions are not a protected class, either under Maryland or federal law.[3]

22. Although BMG repeatedly asked the OAG (on at least four separate occasions) to provide a single piece of evidence supporting OAG's reason to believe that BMG violated any civil rights laws, the OAG merely sent BMG's counsel two rental listings, one from *www.apartments.com* that was clearly not published by BMG, and one from 2022 that has not been active for nearly three years. BMG's counsel asked for more information on the 2022 listing, as well as any additional basis for the investigation, to which the OAG responded on January 27, 2025: "At this time, we are not at liberty to share additional information regarding our investigation."

---

[2] BMG denied, and continues to deny, that *any* of its rental listings or promotional materials have used such language in the relevant period of the past three years.

[3] The OAG ultimately claimed that it was investigating whether, and how, BMG uses a tenant applicant's prior criminal record in its consideration of housing applications. However, the OAG is fully aware that drawing distinctions between recent and past felony convictions is a policy that the Maryland General Assembly itself approved less than four years ago. *See* Md. Code Ann., Real Prop. § 8-218(b)(2)(i) (permitting landlord to obtain "[a] comprehensive criminal history records check for all federal, state, and local charges against and convictions of the prospective tenant over the previous 7 years."). Even further, the legislature has specifically elected **not** to affirmatively classify persons with criminal histories as a protected class under Maryland law. *See* Md. Code Ann., State Gov't § 20-705 (prohibiting housing discrimination only on the basis of race, color, religion, sex, disability, marital status, familial status, sexual orientation, gender identity, national origin, source of income, or military status); *see also* 42 U.S.C.A. § 3604 (prohibiting housing discrimination on the basis of "race, color, religion, sex, familial status, or national origin.").

23. More concerningly, the OAG's stated "basis" for commencing the investigation and issuing the Subpoena shifted depending on the day. Initially, the OAG pointed to BMG's alleged use of the phrase "clean criminal background check" in recent rental listings as the sole piece of evidence driving the investigation. However, as explained *supra*, the OAG was ultimately unable to provide examples of BMG's use of such verbiage besides one unconfirmed instance in 2022, or even explain *how* the one-time use of such a phrase (if it was indeed used, which BMG denies) could trigger a legitimate basis to request every BMG tenant application, screening document, and tenant communication from the past three years. Again, the OAG refused to explain the need for hundreds of thousands of internal BMG documents.

24. After seemingly recognizing that it does not possess *any* evidence that BMG's listings ever contained discriminatory language, or that BMG ever discriminated against members of a protected class, the OAG then switched its "basis" for the investigation by vaguely and cryptically stating that it had received unspecific and unnamed "complaints" that triggered the need for this unlimited and wide-ranging civil rights investigation. When asked about these newly-mentioned mysterious "complaints," the OAG outright refused BMG's request to provide any information or even provide a brief explanation as to the nature of the "complaints" or when they were submitted to the OAG.

25. On or about January 31, 2025, BMG produced various documents to the OAG, pursuant to the Subpoena, attached to a letter following the meeting on January 14, 2025 (the "Response Letter"). The Response Letter noted that BMG maintained an internal policy, *i.e.* a policy not otherwise made public, that screened off prospective tenants that were convicted of felonies (and not any other type of criminal conviction) within the past ten (10) years. This policy was and is entirely consistent with applicable Maryland and federal law.

8

26. Nevertheless, still undeterred from its desire to obtain all of BMG's internal documents without a good faith basis, the OAG continued to demand production of all documents requested in the Subpoena.

27. On or about March 24, 2025, BMG's counsel held an in-person meeting with representatives from the OAG. At the meeting, the OAG presented BMG with a written settlement demand (the "Settlement Demand").

28. The Settlement Demand mandated that, *inter alia*, BMG would agree to: (i) completely change its lawful business practices to conform with the OAG's preferences on applicants with criminal histories, notwithstanding there has been no change in Maryland law; (ii) submit internal policies to the OAG for its approval; (iii) submit all leasing and property management personnel to annual training, to be approved and monitored by the OAG; (iv) submit to OAG a list of <u>all</u> rental denials for three (3) years for the OAG's unilateral review and approval; (v) (iv) waive all application for applicants with <u>any</u> criminal history (not just felonies) for two (2) years, and; (v) pay to the OAG civil penalties in the arbitrary amount of $75,000.00.

29. Tellingly, the Settlement Demand mirrored, almost verbatim, a settlement that the OAG was simultaneously negotiating with American Management II, LLC, another residential property management company in Baltimore, which was ultimately finalized a mere two (2) weeks after BMG's March 24 meeting.[4]  There is no telling to how many private companies Defendants are using these same threatening tactics with a one-size-fits-all demand for total

---

[4] *https://www.marylandattorneygeneral.gov/press/2025/040725b.pdf* (Press Release issued by Defendant Brown on April 7, 2025);
https://www.marylandattorneygeneral.gov/News%20Documents/040725_Executed_American_Management_Settlement.pdf (Settlement Agreement with American Management).

9

governmental oversight of a private business or else face costly litigation.[5]

30. At the in-person meeting on March 24, 2025, BMG again requested that the OAG provide the basis for the initiation of this investigation against BMG to allow BMG to understand why it was necessary for the Subpoena to demand the protection of nearly every BMG business document for the past three years. Once again, the OAG refused to provide such basis and instead threatened BMG that if it did not agree to its heavy-handed Settlement Demand to change its business practices to conform with Defendants' political initiatives and policy preferences, the OAG would take legal action against BMG to enforce the Subpoena and/or prosecute BMG for civil rights violations (despite lacking *any* evidence that such civil rights violations had occurred).

31. Continuing its pattern of obfuscation and evasive behavior, the OAG then blatantly contradicted its prior representation that the investigation was based on "complaints" the OAG received against BMG. Instead, the OAG changed its position again and stated to BMG's counsel at the March 24 meeting that indeed no complaint against BMG had been lodged with the OAG – rather, the OAG had merely "heard things," and this investigation was a result of the "many years" in which "there was no oversight in this area." The OAG personnel present at the March 24 meeting also stated that this is a policy area (*e.g.* ensuring housing for persons with criminal convictions) that Defendant Brown "feels strongly about" and has directed his staff to make this policy "a priority" at the OAG during his tenure in office.

32. Through these communications, along with the OAG's confounding shifting

---

[5] Defendant Brown recently held a press conference (on May 20, 2025) to further publicly name property management companies, including American Management, who it successfully convinced to change their business practices under threat of litigation. Upon information and belief, these public announcements, press conferences, and press releases are designed to intimidate other property management companies to similarly change their legal

explanations for issuing the Subpoena, it ultimately became abundantly clear that the OAG's central goal throughout this process was to use its exceedingly broad, unchecked investigative abilities and the powerful levers of governmental authority to strong-arm BMG, a private business, to change its legal business practices to reflect the preferred policies of Defendants, rather than enact such changes in Maryland law the prescribed way – through the legislative process.

33. BMG rejected the Settlement Demand in a detailed letter to the OAG, dated May 8, 2025, which expressed BMG's ongoing grave concerns about the OAG's refusal to provide a good-faith basis to investigate BMG, intentions, methods, and lack of any legitimate belief the BMG violated Maryland or federal law.[6]

34. In its response, dated June 5, 2025, the OAG refused to respond to BMG's substantive concerns with the Subpoena and abuse of its governmental power, as it has since December 2024, and instead demanded BMG's unconditional full compliance with the Subpoena by producing *all* the documents demanded in the Subpoena within fifteen days, by no later than June 20, 2025.

35. As a result, to protect its property rights, proprietary business interests, the rule of law, and its constitutional rights, and to guard against Defendants' abuse of its investigatory and

---

business practices to match Defendants' policy preferences. *See* https://www.wbaltv.com/article/3-settlements-ensure-fair-housing-maryland-ag/64829650 (WBAL-TV news segment directly linked from the OAG's website).

[6] The only "legal theory" the OAG has ever referenced (without any factual evidence supporting how it would apply here with respect to BMG is "disparate impact liability." On April 23, 2025, President Donald J. Trump issued Executive Order No. 2025-07378 entitled "Restoring Equality of Opportunity and Meritocracy" ("Executive Order"), which amended and clarified the federal government's position on disparate impact liability. *See* 90 FR 17537. The Executive Order unequivocally outlined the Federal Government's opposition to the disparate impact legal theory, stating "[i]t is the policy of the United States to eliminate the use of disparate-impact liability in all contexts to the maximum degree possible to avoid violating the Constitution, Federal civil rights laws, and basic American ideals." The Executive Order also directed Federal agencies to "deprioritize enforcement of all statutes and regulations to the extend they include disparate-impact liability."

enforcement powers through the improper use of unchecked governmental subpoena power to coerce policy changes by private actors, BMG alleges the following causes of action against Defendants:

**COUNT I**
**(Declaratory Judgment – 28 U.S.C. §§ 2201-2202; Federal Rule of Civil Procedure 57)**

36. Each and every allegation contained in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

37. Plaintiff has an interest in determining its rights, interests, and obligations with respect to the Subpoena issued by Defendant OAG, and in particular whether the Subpoena is validly-issued such that BMG must produce the documents commanded therein. More specifically, Plaintiff has an interest in determining the constitutionality of the Subpoena Statute.

38. A statute can be unconstitutional, *i.e.* void, if it is so vague that it does not include "sufficient standards to prevent arbitrary and discriminatory enforcement," in violation of the Due Process Clause of the Fifth and Fourteenth Amendments of the U.S. Constitution. *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019).

39. The Subpoena Statute is plainly unconstitutional because there are indeed <u>no</u> standards to prevent arbitrary and discriminatory enforcement subpoenas issued under this statute.

40. Far from providing "minimal guidelines to govern law enforcement," *Manning*, 930 F.3d at 274, the Subpoena Statute provides no guidelines to curb the enforcement of an improper subpoena issued by the OAG pursuant to this statute.

41. Before initiating a civil action, the OAG is required to conduct a preliminary investigation. Md. Code Ann., State Gov't § 20-1044(a). To aid in that investigation, the OAG is granted the seemingly unlimited power (without first requiring the OAG to have good faith basis

12

to believe that a civil rights violation may have occurred) to issue subpoenas, examine individuals under oath, and compel the production of records, books, papers, contracts, and other documents, as it unilaterally deems fit. *See id*. at (b).

42. The Subpoena Statute provides the OAG with unfettered and unbridled discretion to issue subpoenas to anyone and everyone, regardless of any good-faith basis that the subpoenaed person may have committed a civil rights violation – the type of arbitrary and discriminatory enforcement that the Due Process Clause eschews.

43. In other words, the Subpoena Statute puts the horse before the cart – it specifically authorizes (contrary to state and federal law), and indeed encourages, the OAG to embark on a fishing expedition, when it lacks any evidence of a violation, in the hopes that the subpoenaed documents give the OAG some *post hoc* basis to then determine whether "reasonable cause" exists that a person committed a civil rights violation. *See* Md. Code Ann., State Gov't § 20-1044.

44. Indeed, there are no set of circumstances under which the Subpoena Statute would be constitutional in its current form.

45. Alternatively, and in addition, the Subpoena Statute is unconstitutional as-applied to the facts of this particular case. The OAG's own conduct, in and of itself, proves that it issued the Subpoena without any evidentiary and substantive basis in order to see what it could find.

46. There exists an actual controversy of a justiciable issue between the Parties hereto regarding their legal rights and obligations, within the jurisdiction of the Court. Specifically, there exists an actual controversy regarding the constitutionality of the Subpoena Statute, both facially and as it applies to the Subpoena issued to BMG.

47. Antagonistic claims are present between the Parties, and these claims indicate

imminent and inevitable litigation. Specifically, Defendants maintain that the Subpoena was issued pursuant to valid law, while Plaintiff contends that the Subpoena Statute is facially unconstitutional, and as-applied to the Subpoena issued to BMG.

48. There is no adequate remedy at law to resolve the dispute between the Parties. A Declaratory Judgment will serve to terminate the uncertainty and controversy which has given rise to this proceeding, and will determine the constitutionality of the Subpoena Statute.

## COUNT II
**(Deprivation of Due Process - U.S. Const. Amend. V and XIV)**

49. Each and every allegation contained in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

50. Plaintiff states this cause of action against Defendants, in their official capacities, for purposes of seeking declaratory and injunctive relief.

51. The void-for-vagueness doctrine demands that "precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

52. On its face, the Subpoena Statute fails to provide any precision or guidance to the OAG in what perquisite basis it requires to issue administrative subpoenas, which in turn permits the OAG's enforcement of such subpoenas in an arbitrary and discriminatory manner.

53. The Subpoena Statute does not require the OAG to even possess a reasonable belief, or any reason at all to believe, that the recipient of an administrative subpoena (here, BMG) has committed a single violation of Maryland or federal law, or a legitimate, good-faith belief that the information sought in an administrative subpoena would lead to discovery of evidence of a civil rights violation.

54. As applied to Plaintiff, the unfettered ability of the OAG to issue the Subpoena to

Plaintiff is tantamount to arbitrary and discriminatory enforcement of a civil statute because it does not require the OAG to have a good faith basis, or any reason at all, to believe that BMG may have committed an act of discrimination.

55.     The Subpoena Statute fails to provide any guidance or guardrails to the OAG's ability to issue subpoenas to whomever it chooses, whenever it wants, and for any or no reason at all.

56.     The Subpoena Statute gives full discretion to the OAG to determine who should be subject to the demands of a subpoena without any mechanism for a subpoena recipient to challenge the issuance of the subpoena or even confirm that it was a legitimate exercise of governmental investigative authority.

57.     Plaintiff has incurred damages resulting from Defendants' deprivation of BMG's due process rights accorded to it under the United States Constitution.

58.     Plaintiff seeks redress for Defendants' violation of its due process rights, in an amount in excess of $75,000, to be proven at trial, plus interest and recovery of reasonable costs and attorney's fees incurred in this action.

**COUNT III**
**Article 24 of the Maryland Declaration of Rights – Due Process**

59.     Plaintiff incorporates by reference each and every allegation made in the preceding paragraphs.

60.     Article 24 of the Maryland Declaration of Rights provides that "no man ought to be . . . deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

61.     The due process protections in Article 24 are also interpreted *in pari materia* with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

62. For the reasons stated *supra*, the Defendants' violated BMG's substantive due process rights under Article 24 of the Maryland Declaration of Rights.

## COUNT IV
### (Abuse of Process)

63. Each and every allegation contained in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

64. Defendants willfully abused its statutory investigatory powers authorized in the Subpoena Statute for an illegal purpose by issuing the Subpoena to coerce a private business to change its legal business practices to conform to Defendants' policy preferences and political initiatives.

65. The Subpoena Statute did not contemplate the OAG issuing Subpoenas without first having good cause or legitimate reason to believe a civil rights violation had occurred.

66. At the time it issued the Subpoena, Defendants lacked a good faith basis to believe that BMG had committed a civil rights violation.

67. Defendants issued the Subpoena for its own ulterior motive to coerce a private company (*e.g.* BMG) to adopt Defendants' policy preferences and political initiatives.

68. As a direct and proximate result of Defendants' actions, BMG has suffered damages, in an amount in excess of $75,000, to be proven at trial, plus interest and recovery of reasonable costs and attorney's fees, by having to defend against the Subpoena, which was issued without a legitimate basis and for an unlawful and improper purpose.

## COUNT V
### (Injunctive Relief - Federal Rules of Civil Procedure 65 – Invalid Subpoena)

69. Each and every allegation contained in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

70. This is an action for injunctive relief pursuant to Federal Rules of Civil Procedure 65.

71. Plaintiff is likely to succeed on the merits of this claim.

72. Absent a preliminary and permanent injunction, Plaintiff will suffer irreparable harm by, among other things, being forced to provide otherwise private and proprietary information pursuant to an invalid subpoena issued under an unconstitutional law, in violation of Plaintiff's due process rights under the United States Constitution and Maryland Declaration of Rights.

73. The benefits to Plaintiff in obtaining injunctive relief outweigh any potential harm that Defendants would incur if this Court grants the requested injunctive relief.

74. The issuance of a preliminary and permanent injunction would serve the public interest. By issuing an injunction, this Court would uphold the bedrock constitutional principle that laws must meet sufficient standards to prevent arbitrary and discriminatory enforcement. And, given that Defendants have already used the same threatening tactics against multiple private companies -- *e.g.* seek to compel of legal business practices to Defendants' policy preferences under threat of costly litigation – it is likely that Defendants are continuing their improper and unlawful abuse of this unconstitutional Subpoena Statute.

**COUNT VI**
**(Injunctive Relief - Federal Rules of Civil Procedure 65 – Indefinite and Overbroad Subpoena)**

75. Each and every allegation contained in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

76. This is an action for injunctive relief pursuant to Federal Rules of Civil Procedure 65.

17

77. Plaintiff is likely to succeed on the merits of this claim because an administrative subpoena is only valid if it is "not too indefinite or overbroad." *See Unnamed Atty. v. Att'y Grievance Comm'n*, 313 Md. 357, 365 (1988); citing *Okla. Press Pub. Co. v. Walling,* 327 U.S. 186, 208 (1946).

78. The Subpoena issued to BMG is both indefinite and overbroad because it demands the productions of thousands of documents, without limitation, covering nearly every area of BMG's business practices, tenant application procedures, and communications with all tenants and applications.

79. Absent a preliminary and permanent injunction, Plaintiff will suffer irreparable harm by, among other things, being forced to provide a massive amount of documents in response to a Subpoena that is exceedingly indefinite and overbroad.

80. The benefits to Plaintiff in obtaining injunctive relief outweigh any potential harm that Defendants would incur if this Court grants the requested injunctive relief, especially because Defendants cannot substantiate a legitimate basis for obtaining the massive amount of information that Plaintiff, a private entity, is being forced to produce to a governmental investigatory body.

81. The issuance of a preliminary and permanent injunction would serve the public interest by ensuring compliance with Maryland and federal law that an Administrative Subpoena is only valid if it is "not too indefinite or overbroad." *See Unnamed Atty.*, 313 Md. at 365.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Bay Management Group, LLC, respectfully requests that this Court enter judgment in its favor and against Defendants Civil Rights Division, Office of the Attorney General of Maryland ("Defendant OAG" or the "OAG") and Anthony G. Brown, in his

official capacity as Attorney General of the State of Maryland, jointly and severally, and that the Court grant the following relief:

    (i)      A declaration that the Subpoena Statute, codified at Md. Code Ann., State Gov't § 20-1044(b), is unconstitutionally void for vagueness in violation of the Due Process Clause of the Fifth and Fourteenth Amendment of the U.S. Constitution;

    (ii)     A declaration that the Subpoena Statute, codified at Md. Code Ann., State Gov't § 20-1044(b), is unconstitutional because it does not provide subpoena recipients with due process to determinate and challenge the validity of an Administrative Subpoena issued without a legitimate basis or good cause;

    (iii)    A declaration that Defendants' past, present, and threatened future, actions regarding the Subpoena Statute violate the Due Process Clause of the Fifth and Fourteenth Amendment of the U.S. Constitution;

    (iv)    A declaration that the documents and information sought in the Subpoena are not relevant to a valid investigation authorized by the Subpoena Statute in Md. Code Ann., State Gov't § 20-1044;

    (v)     A declaration that the requests in the Subpoena are indefinite, overbroad, and unduly burdensome;

    (vi)    A declaration that Subpoena is invalid under state and federal law;

    (vii)   A preliminary and permanent injunctive enjoining Defendants from enforcing the Subpoena against Plaintiff;

    (viii)  An order quashing the Subpoena due to the unconstitutionality of the Subpoena Statute;

(ix) An Order that Defendants issuance of the Subpoena to BMG was an abuse of their statutory investigative power;

(x) Compensatory damages in an amount exceeding $75,000.00, to be determined at trial, plus interest;

(xi) Punitive damages for the Defendants' gross intentional abuse of its investigatory power by maliciously attempting to coerce a private business to change its legal business practices to conform to Defendants' policy and political preferences, in an amount to be determined at trial;

(xii) Plaintiff is entitled to recovery of its reasonable costs and attorney's fees incurred in connection with the Subpoena; and

(xiii) Any such other and further relief as this Court deems just and proper.

## REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues so triable.

Dated: June 23, 2025

> Respectfully submitted,
>
> */s/ Jeffrey M. Lichtstein*
> Jeffrey M. Lichtstein, Fed. Bar No. 20731
> Michael P. Spanos, Fed. Bar No. 31546
> Rosenberg Martin Greenberg, LLP
> 25 South Charles Street, 21st Floor
> Baltimore, Maryland 21201
> (410) 727-6600 (phone)
> (410) 727-1115 (fax)
> jlichtstein@rosenbergmartin.com
> mspanos@rosenbergmartin.com
> *Attorneys for Plaintiff,*
> *Bay Management Group, LLC*

4904-7414-0496, v. 5