**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | | |
|---|---|---|
| **BAY MANAGEMENT GROUP, LLC** | * | |
| | * | |
|     Plaintiff, | * | |
| | * | |
| v. | * | Case No. 1:25-cv-02008-JRR |
| | * | |
| **CIVIL RIGHTS DIVISION,** | * | |
| **OFFICE OF THE ATTORNEY** | * | |
| **GENERAL OF MARYLAND**, *et al*. | * | |
| | * | |
|     Defendants. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

Respectfully submitted,

*/s/ Jeffrey M. Lichtstein*
Jeffrey M. Lichtstein, Fed. Bar No. 20731
Michael P. Spanos, Fed. Bar No. 31546
Rosenberg Martin Greenberg, LLP
25 South Charles Street, 21st Floor
Baltimore, Maryland 21201
(410) 727-6600 (phone)
(410) 727-1115 (fax)
jlichtstein@rosenbergmartin.com
mspanos@rosenbergmartin.com
*Attorneys for Plaintiff,
Bay Management Group, LLC*

## INTRODUCTION

Plaintiff Bay Management Group, LLC ("Plaintiff" or "BMG") is a private residential property management company based in Baltimore, Maryland, and is among the largest and most well-known property management companies in the greater Baltimore region. Defendant Civil Rights Division of the Office of the Attorney General of Maryland ("Defendant OAG" or the "OAG"), launched on January 1, 2024, and overseen by Defendant Anthony G. Brown, Attorney General of Maryland, in his official capacity (the "AG") (together with the OAG, "Defendants," and collectively with Plaintiff, the "Parties"), is a governmental entity tasked by the Maryland legislature to, among other things, enforce anti-discrimination and civil rights laws.

This matter arises from the OAG's service of an Administrative Subpoena (the "Subpoena")[1] on BMG, a true and accurate copy of which is attached to the Complaint ("Compl.") as **Exhibit A** and attached hereto for the Court's reference. Using the unfettered and unchecked ability to subpoena documents from private entities granted to the OAG under Md. Code Ann., State Gov't § 20-1044, the Subpoena commanded the production of nearly every document in BMG's possession related to its tenant application process.

After much back and forth, and through various meetings and correspondences of the OAG and BMG's counsel, it became clear to BMG that the OAG's ultimate goal in issuing the Subpoena was not to investigate potential civil rights violations, but instead to strong-arm a private business to change its *lawful* business practices to conform to the preferred policy objectives of Defendants. While BMG produced certain documents requested by the OAG, it rejected the OAG's settlement demand which, among other things, demanded that BMG agree to, completely change its lawful business practices to conform with the OAG's policy preferences on applicants with criminal

---

[1] All terms not defined herein shall have their defined meaning in the Complaint, incorporated herein by reference.

histories, submit all leasing and property management personnel to annual training, to be approved and monitored by the OAG, oversight of BMG's business practice, and pay to the OAG certain arbitrary civil penalties. BMG rejected the demand.

On June 23, 2025, BMG filed the Complaint in this action, in which it requested that this Court, *inter alia*, declare that the statute which gives the authority to Defendants to issue the Subpoena, Md. Code Ann., State Gov't § 20-1044(b) ("Subpoena Statute"), is unconstitutional on its face, and as applied to BMG, and is void for vagueness, in contravention of the Due Process clauses of Fifth and Fourteenth Amendment of the United States Constitution. As written, and as applied to BMG, this statute is so vague that it fails to provide <u>any</u> guidance or guardrails to the OAG's ability to issue subpoena to whomever it chooses, whenever it wants, and for any or no reason at all.

By and through this instant Motion for Preliminary Injunction, Plaintiff seeks to simply maintain the status quo until a judgment on the merits may be rendered. For the reasons set forth below, (i) Plaintiff is likely to succeed on the merits, (ii) there is a strong likelihood of irreparable harm, (iii) the balance of equities favors injunctive relief, and (iv) injunctive relief in this matter is in the public interest. Accordingly, this Court should grant Plaintiff's Motion for Preliminary Injunction.

## STATEMENT OF FACTS

### I. The Legislative Scheme

Defendants claim to have issued the Subpoena pursuant to newly-created powers granted to the OAG by the legislature in Md. Code Ann., State Gov't §§ 20-1040, *et seq.,* which, among other things, gives the OAG unbridled discretion to serve subpoenas upon any private entity, for any documents it wants, without limitation, and without any initial showing of needs or potential

wrongdoing. (*See* Compl., ¶ 16). Specifically, § 20-1044(b) openly allows the OAG to issue subpoenas to any entity it desires without any prerequisite of reason or good cause. (*Id*., ¶ 18). The issuance of subpoenas is purportedly done as part of a "preliminary investigation to determine whether there is reasonable cause to believe that any person committed a civil rights violation." (§ 20-1044(b); *see also* Compl., ¶ 17). Such an investigation must be conducted prior to initiating a civil action alleging any potential civil right violation(s). (*Id*.). A "civil rights violation" includes discriminatory acts prohibited under the United States and Maryland Constitution(s), as well as acts as defined under Md. Code Ann., State Gov't § 20-101.[2]

According to the plain language of the statute, and as it they did to BMG, Defendants may in their sole unfettered and unqualified discretion, and in order to pursue their policy preferences and political initiatives, issue subpoenas to *any* entity, for *any* reason whatsoever or no reason at all, in order to "compel production of records, books, papers, contracts, and other documents" without any mechanism for a subpoena recipient to determine if there was even a basis to believe a violation had occurred. Md. Code Ann., State Gov't § 20-1044(b). The Subpoena Statute also grants the OAG the unchecked ability to "subpoena witness; administer oaths; [and] examinate individuals under oath," all without first having a legitimate, good faith basis to believe that a civil rights violation may have occurred. *Id*.

**II.    The Subpoena**

On or about December 2, 2024, without any prior notice or correspondence to BMG or its personnel, the OAG served the Subpoena on BMG. (*See* **Ex. A**; *see also* Compl., ¶ 12). Although concerned mainly with terms such as "criminal history" and "criminal background check," the overbroad Subpoena, as aforementioned, commanded production of essentially every document in

---

[2] In turn, Section 20-101 defines discriminatory act, *inter alia*, as an act prohibited under Md. Code Ann., State Gov't §§ 20-701, *et seq*.

BMG's possession related to its tenant application process. (*See*. Compl., ¶¶ 19, 20). It demanded, *inter ali*a: (i) all documents that relate to BMG's policies, practices, and procedures utilized regarding the consideration of applicants who receive rental assistance in the rental or lease of housing; (ii) all correspondence or communications with any person or company engaged by BMG to conduct background investigations or verify the eligibility of applicants based on criminal records or rental assistance use; and; (iii) all documents concerning rental applications submitted by persons who used rental assistance. (*See* **Ex. A** at p. 6-7). In total, to comply with the incredibly overbroad and unduly burdensome Subpoena, BMG would need to expend hundreds of hours and hundreds of thousands of dollars (at least), ultimately producing over 100,000 unique documents pertaining to more than 15,000 tenant applicants in the State of Maryland, for more than 4,500 rental units. (*See* Declaration of Patrick Freeze ("Freeze Decl."), annexed hereto, at ¶¶ 8, 10; Compl., ¶¶ 1, 15, 19, 23).

After receiving the Subpoena, BMG immediately contacted the OAG (through counsel) to ascertain the basis for the Subpoena. (Compl., ¶ 19). The OAG refused to provide any factual basis justifying its belief there may have been a potential civil rights violation committed by BMG, only demanding that BMG produce hundreds of thousands of pages of internal BMG documents simply because the OAG has the unlimited right to issue the Subpoena under the Subpoena Statute. (*See* Affidavit of Jeffrey M. Lichtstein ("Lichtstein Aff."), annexed hereto; at ¶ 4; Compl., ¶¶ 20-22). The OAG merely maintained that they were investigating BMG under the "disparate impact" theory of housing discrimination.

On or about January 14, 2025, BMG's counsel met virtually with representatives from the OAG. (Lichtstein Aff. at ¶ 5; Compl., ¶ 20). During that meeting, the OAG stated that Defendants were concerned with BMG's tenants screening practices as they relate to BMG's use of criminal

background checks. Specifically, the OAG believed that BMG had used the phrase "clean criminal background check" in the "tenant requirements" section of certain rental listings, a phrase that the OAG unilaterally determined to be unlawful.[3] (*Id.*) Although BMG repeatedly asked the OAG to provide a single piece of evidence supporting OAG's reason to believe that BMG violated any civil rights laws, the OAG merely sent BMG's counsel two rental listings, one from *www.apartments.com* that was clearly not published by BMG, and one from 2022 that has not been active for nearly three years. (Lichtstein Aff. at ¶ 5; *id.*, 22). BMG's counsel asked for more information on the 2022 listing, as well as any additional basis for the investigation, to which the OAG responded on January 27, 2025: "At this time, we are not at liberty to share additional information regarding our investigation." (*Id.*).

On or about January 31, 2025, BMG produced various documents to the OAG, pursuant to the Subpoena, attached to a Response Letter. (Compl., ¶ 25; Lichtstein Aff. at ¶ 7). The Response Letter noted that BMG maintained an entirely-legal internal policy that screened off prospective tenants that were convicted of <u>felonies</u> within the past ten (10) years. (*Id.*). On or about March 24, 2025, BMG's counsel held an in-person meeting with representatives from the OAG. (*Id.*, ¶ 27; Lichtstein Aff. at ¶ 8). At the meeting, the OAG presented BMG with a written unilateral Settlement Demand. (*Id.*) The Settlement Demand mandated that, *inter alia,* BMG agree to: (i) completely change its lawful business practices to conform with the OAG's preferences on applicants with criminal histories, notwithstanding there has been no change in Maryland law; (ii) submit internal policies to the OAG for its approval; (iii) submit all leasing and property management personnel to annual training, to be approved and monitored by the OAG; (iv) submit to OAG a list of all rental denials for three (3) years for the OAG's unilateral review and approval;

---

[3] BMG denies the use of any such language in *any* of its rental listings or promotional materials.

(v) waive all application for applicants with any criminal history (not just felonies) for two (2) years; and; (vi) pay to the OAG civil penalties in the arbitrary amount of $75,000.00. (*Id.*, ¶ 28; Lichtstein Aff. at ¶ 8).

At the in-person meeting on March 24, 2025, the OAG threatened that if BMG did not capitulate to its draconian Settlement Demand, the OAG would initiate all available legal action(s) to enforce the Subpoena, command the production off all documents demanded therein, and pursue legal action for any potential civil rights violation(s) (despite having no evidence of such potential violation(s)). (Compl., ¶ 30). By letter dated May 8, 2025, BMG rejected the "settlement" offer. (*Id.*, ¶ 33; Lichtstein ¶ 10). Apparently still determined to continue fishing for evidence of any civil rights violation(s) so as to coerce BMG to change its tenant application process, the OAG demanded BMG's unconditional compliance with the Subpoena by producing all documents demanded therein no later than June 20, 2025. (*Id.*, ¶ 34). BMG filed this action on June 23, 2025, which, among other things, seeks both a preliminary and permanent injunction against the Defendants' ability to enforce the Subpoena against BMG.

## LEGAL STANDARD

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). Simply stated, preliminary injunctions are designed to "protect the status quo." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). In determining whether to issue a preliminary injunction, a court must consider four factors: (1) whether the plaintiff "is likely to succeed on the merits," (2) whether the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief," (3) whether "the balance of equities tips in [plaintiff's] favor," and (4) whether "an

injunction is in the public interest." *Winter*, 555 U.S. at 20.  "All four requirements must be met in order for a preliminary injunction to be granted." *J.O.P. v. U.S. Dep't of Homeland Sec.*, 338 F.R.D. 33, 58 (D. Md. 2020) (internal citations omitted).

### ARGUMENT

BMG satisfies each factor for injunctive relief outlined above. Each factor is analyzed in turn.  For the reasons that follow, BMG's request for injunctive relief should be granted.

**I.      BMG is Likely to Succeed on the Merits.**

BMG is likely to succeed in declaring that the Subpoena Statute is unconstitutionally vague under the Fifth and Fourteenth Amendment of the U.S. Constitution, both facially and as-applied to BMG.

To obtain a preliminary injunction, a plaintiff must demonstrate a likelihood of success on the merits. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).   Prevailing on the merits does not necessarily mean plaintiffs must show a "certainty of success," but instead "make a clear showing that he is likely to succeed at trial." *Id*.   While a plaintiff is not required to satisfy a certain "burden of proof, such as 'preponderance of the evidence,'" the plaintiff must demonstrate "substantial grounds raising a serious possibility that the petitioner will prevail on the merits." *U.S. v. Mandel*, 408 F. Supp. 679, 682 (D. Md. 1976).

The Fourth Circuit has held that a statute is "unconstitutionally vague under the Due Process Clause if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir. 2012) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).  The "more important aspect of vagueness doctrine … is the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender*

*v. Lawson*, 461 U.S. 352, 358 (1983) (internal quotations omitted). "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to [those enforcing the law] for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d 243, 278 (D. Md. 2025), *opinion clarified*, 769 F. Supp. 3d 465 (D. Md. 2025) (internal citations omitted).

BMG is likely to succeed on the merits of its Complaint because the Subpoena Statute does not contain any guardrails by which to constrain, or even govern, the OAG's ability to issue pre-litigation, investigatory Administrative Subpoenas to any entity or person, even when it lacks any basis or reason to believe a civil rights violation may have occurred. In reality, the current Subpoena Statute does the exact opposite of requiring the OAG to have a basis to issue subpoenas or depose witnesses. The Subpoena Statute actually *encourages* the OAG to fish for potential civil rights violation(s) by casting a wide net to any private entity it unilaterally decides by simultaneously **requiring** the OAG to conduct a "preliminary investigation" through the issuance of pre-litigation discovery, while at the same time **not requiring** the OAG to first have a good faith basis before issuing the discovery demands. *Compare* Md. Code Ann., State Gov't § 20-1044(a) ("the Office of the Attorney General shall conduct a preliminary investigation") *with* § 20-1044(b) (containing no requisite basis or good faith belief *before* issues subpoenas, examining individuals under oath, and compelling the production of documents). The Subpoena Statute, on its face, allows the OAG to serve a subpoena on whomever it so chooses, compel the production of any document it may desire, and then sue the private entity for failing to provide enough documents that the OAG deems satisfactory. Simply stated, the Subpoena Statute permits the

OAG to enforce the law in pursuit of its policy predilections. In its current form, the Subpoena Statute is "unconstitutionally vague in all of its applications," and therefore cannot survive constitutional scrutiny. *See Martin*, 700 F.3d at 135.

As applied to BMG, the Subpoena issued pursuant to Subpoena Statute is unconstitutional because the OAG cannot articulate, even when requested, any reason for its demand that BMG produce *all* of its tenant application files for the past three (3) years. Rather, the OAG has used its unchecked power stemming from unconstitutionally vague Subpoena Statute as a basis to harass BMG and conduct a fishing expedition, in the hopes it finds *something* to use as leverage against BMG to change its business practices. The overbroad nature of the Subpoena is especially evident in the OAG's demand that BMG produce "all documents" for all applicants "who used rental assistance." (*See* Exhibit A, Requests Nos. 2, 5, 6). Yet, over the course of multiple conversations and meetings between the OAG and BMG's counsel over the course of five (5) months, when asked for the basis of the investigation, the OAG *never* mentioned a single concern about applicants using rental assistance, or even raised the topic of rental assistance. Similarly, when it made its extortive Settlement Demand on BMG, the OAG did not request any revisions to BMG's policy regarding applicants using rental assistance or even use the term "rental assistance." If the OAG's Subpoena was based on legitimate concerns about BMG's business practices or evidence of potential civil rights violations committed by BMG, and was issued in good faith, the OAG presumably would have had an actual reason for requesting documents relating to "rental assistance" applicants. It did not, which speaks volumes about the OAG's lack of any good faith basis for issuing the Subpoena.

For these reasons, and because the vague and unconstitutional nature of Subpoena Statute has permitted the OAG to issue the Subpoena to BMG without any basis or good cause, BMG is likely to succeed on the merits.

**II.     BMG Will Likely Suffer Irreparable Harm Absent Injunctive Relief**

BMG will suffer irreparable harm if it is forced to expend significant resources to produce thousands of documents pursuant to statute which BMG alleges is unconstitutional and for which BMG has demonstrated, *supra*, that it is likely to succeed in declaring the statute unconstitutional.

"[A] party seeking a preliminary injunction must prove that he or she is 'likely to suffer irreparable harm in the absence of preliminary relief.'" *Pashby v. Delia*, 709 F.3d 307, 328 (4th Cir. 2013) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). "To establish irreparable harm, the movant must make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). It is unquestioned that "the prospect of an unconstitutional enforcement supplies the necessary irreparable injury." *PFLAG, Inc. v. Trump*, 769 F. Supp. 3d 405, 449 (D. Md. 2025) (quoting *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 103 (4th Cir. 2022)). "[W]here a plaintiff has shown a strong likelihood of success on a constitutional claim, **irreparable harm has been established**." *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d at 287 (emphasis added).

Additionally, while monetary damages typically do not constitute "irreparable harm," there are certain circumstances where Courts in this Circuit have found such economic harm as sufficient to satisfy this element. *See, e.g.*, *Trump*, 767 F. Supp. 3d at 288 ("while economic damages are

often ultimately recoverable in litigation, and thus not irreparable harm, if those damages are *not* recoverable, they can amount to irreparable injury."). And, "irreparable harm may still occur in extraordinary circumstances, such as when monetary damages are unavailable or unquantifiable." *Am. Ass'n of Colleges for Tchr. Educ. v. McMahon*, 770 F. Supp. 3d 822, 858 (D. Md. 2025), *reconsideration denied,* No. 1:25-CV-00702-JRR, 2025 WL 863319 (D. Md. Mar. 19, 2025). Here, because the Subpoena demanded the production of *every* tenant application and related documents for applicants with a criminal history or who used rental assistance, BMG would first need to undergo the tedious and time-consuming process[4] of deciphering which of those tenant applications, and all related emails and other internal documents for each of those applicants, were submitted by applicants with (i) criminal histories, (ii) utilizing rental assistance, or (iii) neither. (Freeze Decl. at ¶ 9). To do so, BMG would either need to: (i) expend hundreds of hours dedicating nearly all of its employees/staff to reviewing more than 15,000 rental applications and 100,000 unique documents for responsiveness, *or* (ii) incur costs of a third-party vendor to upload, sort, review, and produce responsive documents, which is estimated to be in excess of $200,000. (*Id.* at ¶ 10). The use of BMG staff to review, sort, and review hundreds of thousands of documents for responsiveness to the Subpoena would have a severe and detrimental effect on BMG's day-to-day business operations, and would negatively affect property owners, tenants, and all other persons who are involved in BMG's business of residential property management. (*Id.* at ¶ 11). This would cause damages to BMG that are entirely unquantifiable and therefore could never be recovered. Each of these options, in and of itself, is sufficient to constitute irreparable harm – either shut down most of BMG's business operation, to the detriment of its tenants, or incur uncoverable six figure costs of document review and production.

---

[4] The fact that BMG does not already segregate applications from prospective tenants with criminal histories or using rental assistance is further evidence that it does not discriminate on the basis of either characteristic.

-11-

*Second*, this Court recently re-affirmed the principle that "economic damages may constitute irreparable harm where no remedy is available at the conclusion of litigation." *McMahon,* 770 F. Supp. 3d 822, 858 (D. Md. 2025) (*citing Mountain Valley Pipeline, LLC v. W. Pocahontas Properties Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019)). There is no mechanism in the Subpoena Statute, or anywhere else in the Maryland Code or Maryland Rules, that would permit BMG to recover its costs, fees, and expenses in the event it suffers the aforementioned economic harm by producing the subpoenaed documents and then prevails at the end of this litigation. In other words, BMG would incur substantial economic harm that could not be remedied if this Court finds, and BMG believes it will, that the Subpoena Statute is unconstitutional. *That* is sufficient under this Court's precedent to constitute irreparable harm.

Further, if BMG is forced to produce hundreds of thousands of pages of its internal and confidential documents for the past three years, simply for the OAG to embark on a fishing expedition to see if it can find something to latch onto for legal action, there is no way to "unring the bell" if this Court ultimately enters final Judgment in BMG's favor. Once a private company's documents are in the hands of a governmental agency (especially one with essentially unlimited enforcement powers), even if they are found to have had no legal right to have the documents in the first place, there is no way to ensure that such documents will not be used to manufacture future (and possibly retaliatory) claims against BMG, whether for a civil rights violation or other non-discrimination based civil action that the OAG may decide to take against BMG. While Md. Code Ann., State Gov't § 20-1044(c) prohibits the OAG from using documents produced pursuant to the Subpoena Statute in future *criminal* actions, it does *not* contain any limitation on the OAG's use of such documents in future civil actions.

Finally, the demands that the OAG has placed upon BMG, especially in the Settlement Demand and by virtue of their threats of litigation on the tenuous "disparate impact" legal theory will place BMG at serious risk of violating federal law and/or becoming the target of federal investigation. It is no secret that the Trump Administration has radically changes the priorities of the federal government, including the Department of Housing and Urban Development's view of the "disparate impact" theory of discrimination. On April 23, 2025, President Donald J. Trump issued Executive Order No. 2025-07378 entitled "Restoring Equality of Opportunity and Meritocracy" ("Executive Order"), which amended and clarified the federal government's position on disparate impact liability. *See* 90 FR 17537. The Executive Order stated "[i]t is the policy of the United States to eliminate the use of disparate-impact liability in all contexts to the maximum degree possible to avoid violating the Constitution, Federal civil rights laws, and basic American ideals." If BMG is forced to grant waivers of application fees or additional opportunities to "appeal" application denials only to persons with criminal histories, as the OAG has demanded of BMG, it is likely that the Federal Government would view *those* policy changes as being made on the basis of race discrimination.

Because Plaintiff will suffer severe irreparable harm absent injunctive relief, in the numerous ways outlined above the second element for granting a preliminary injunction is satisfied.

**III.    The Balance of Equities and the Public Interest Warrant Injunctive Relief.**

The potential for harm to BMG if it were to comply with an unconstitutional subpoena greatly outweighs any potential harm in Defendants by granting injunctive relief as to the enforcement of such subpoena. The balance of equities and public interest warrant injunctive relief.

In determining whether injunctive relief is appropriate, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Ass'n of Am. Publishers, Inc. v. Frosh,* 586 F. Supp. 3d 379, 397 (D. Md. 2022) (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987)). The balance of the equities and the public interest "merge when the Government is the opposing party." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (internal citations omitted). In balancing the equities, the court considers "the relative harms to the applicant and respondent, as well as the interests of the public at large." *Trump*, 767 F. Supp. 3d at 288. A Court must also consider "the 'harm to the plaintiff if the injunction is erroneously denied versus harm to the defendant if the injunction is erroneously granted." *Students for Fair Admissions v. United States Naval Acad.*, 707 F. Supp. 3d 486, 509 (D. Md. 2023).

In the first instance, "[g]overnment is not harmed by the issuance of a preliminary injunction which prevents it from enforcing restrictions likely to be found unconstitutional." *PLFAG, Inc.*, 769 F.Supp.3d at 450. Here, a preliminary injunction would merely protect the status quo and be of zero harm to Defendants. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d at 525. BMG has maintained all documents in its possession and if the Court were to ultimately side with Defendants, the OAG would be in the same position then as it would be now if BMG produced the subpoenaed documents. In other words, there is no harm to OAG by waiting until this case is litigated to enforce the Subpoena; conversely, as explained above, the irreparable harm that BMG would face if it produced the documents now, then prevailed on the merits at trial, would be irreversible and entirely inequitable.

Injunctive relief would ensure that the OAG could not enforce its power to obtain private, protected information of a law-abiding business while the constitutionality of the statute that

-14-

awards the OAG such unchecked and unlimited power is being litigated in this Court. In other words, Defendants "are not harmed by a prohibition that maintains the status quo and enjoins the enforcement of restrictions likely to be found unconstitutional." *PFLAG,* 769 F. Supp. 3d at 416; *see also Leaders of a Beautiful Struggle v. Balt. Police Dep't,* 2 F.4th 330, 346 (4th Cir. 2021). Accordingly, the balance of equities and the public interest both heavily favor injunctive relief.

## CONCLUSION

For these reasons, Plaintiff has sufficiently demonstrated that it is likely to succeed on the merits, that it is likely to suffer irreparable harm, that the balance of equities, and the public interest, weighs in favor of injunctive relief. Accordingly, Plaintiff respectfully requests that this Court grant its Motion for Preliminary Injunction and enjoin Defendants from enforcing the Subpoena against Plaintiff pending final resolution of Plaintiff's claims alleged in the Complaint.

Dated: July 3, 2025                             Respectfully submitted,

*/s/ Jeffrey M. Lichtstein*
Jeffrey M. Lichtstein, Fed. Bar No. 20731
Michael P. Spanos, Fed. Bar No. 31546
Rosenberg Martin Greenberg, LLP
25 South Charles Street, 21st Floor
Baltimore, Maryland 21201
(410) 727-6600 (phone)
(410) 727-1115 (fax)
jlichtstein@rosenbergmartin.com
mspanos@rosenbergmartin.com
*Attorneys for Plaintiff,*
*Bay Management Group, LLC*