**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

BAY MANAGEMENT GROUP, LLC,          *

            *Plaintiff*,                 *

         v.                      *

                                      No. 1:25-cv-2008

CIVIL RIGHTS DIVISION, OFFICE     *
OF THE ATTORNEY GENERAL OF
MARYLAND, *et al.*,                 *

            *Defendants*.

    *      *      *      *      *      *      *      *      *      *      *      *

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT**

ANTHONY G. BROWN
Attorney General of Maryland

JAMES D. HANDLEY
Federal Bar No. 20299
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jhandley@oag.state.md.us
(410) 576-6993
(410) 576-6995 (facsimile)

August 19, 2025                 Attorneys for Defendants

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 3

    Legislative History of S.B. 540 ........................................................................ 3

    Bay Management's Complaint ........................................................................... 6

ARGUMENT ............................................................................................................. 8

I.      STANDARD OF REVIEW. ............................................................................. 8

    A.    Rule 12(b)(1). ................................................................................... 8

    B.    Rule 12(b)(6). ................................................................................... 9

II.    SOVEREIGN IMMUNITY BARS MOST OF PLAINTIFF'S CLAIMS. .............................. 10

    A.    Defendants are Immune from Suit in Federal Court for Most of
          Plaintiff's Federal Claims and Injunctive Relief. ........................................ 11

    B.    Defendants are Immune from Suit in Federal Court for Plaintiff's
          Maryland Claims. ................................................................................. 12

    C.    Plaintiff Cannot Meet its Burden to Demonstrate an Exception to
          Sovereign Immunity Applies to Most of its Claims. ................................... 13

III.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM. ............................................ 15

    A.    Plaintiff's Vagueness and Due Process Claims Fail to State a Claim ......... 15

    B.    Plaintiff's Tort of Abuse of Process Fails to State a Claim and Must
          be Dismissed. ...................................................................................... 25

CONCLUSION .......................................................................................................... 27

## INTRODUCTION

Throughout its complaint, Plaintiff, Bay Management Group LLC ("Bay Management" or "Plaintiff"), distorts the scope and effect of Md. Code Ann., State Gov't §§ 20-1040, *et seq.*, (LexisNexis 2021) (the "Subpoena Statute"), a copy of which is attached hereto and incorporated herein as Exhibit 1. As told by Bay Management, the Subpoena Statute gives the Office of the Attorney General ("OAG"), the Civil Rights Division of the OAG ("Civil Rights"), and Attorney General Anthony G. Brown ("AG Brown," or collectively with Civil Rights, "Defendants") unfettered power to seek information from private actors related to civil rights violations. However, once focused on the law and facts, the reality is the Subpoena Statute simply empowers Defendants to conduct reasonable discovery in support of civil rights investigations, a power well-established in other federal and state agencies and Plaintiff's claims collapse.

Plaintiff's complaint must be dismissed in its entirety because the Defendants are immune from suit in federal court under the Eleventh Amendment and the doctrine of sovereign immunity and because Bay Management fails to state a claim upon which relief can be granted. Sovereign immunity bars claims against state entities, such as Civil Rights, in federal courts, bars monetary relief against state entities and officials, and bars state law claims against state entities and officials in federal court. Thus, the only claim that survives dismissal after applying sovereign immunity is Count One, which seeks injunctive relief, against AG Brown.

Even if sovereign immunity did not bar most of Plaintiff's claims, the complaint must still be dismissed for failure to state a claim. More specifically, Bay Management's void for vagueness and due process violation claims under federal and state law (Counts One, Two, and Three) fail because as facial challenges, which are disfavored, Plaintiff is unable to allege sufficiently that the Subpoena Statute is impermissibly vague in all of its applications. Subpoenas, requests for production of documents, and other discovery-like means that state agencies and instrumentalities are empowered to use during investigations do not require any evidence of wrongdoing prior issuance. Instead, the Defendants may conduct a preliminary investigation to determine whether there is reasonable cause to bring a civil claim for a violation. In fact, the entire purpose of the subpoena powers in the Subpoena Statute is to determine if there is reasonable cause to believe a civil rights violation has occurred. Significantly, Maryland law is clear that these investigations, including subpoenas and requests for documents, are permissible even when it is later determined that there is no merit to the claims being investigated.

Bay Management, in the alterative, brings an as applied challenge; however, this too must be dismissed, as it has not sufficiently alleged that the subpoena at issue is invalid. Finally, Bay Management's abuse of process state tort claim fails to state a claim because it fails, among other fatal defects, to sufficiently allege damages. As detailed more below, Bay Management's complaint must be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS

### Legislative History of S.B. 540

During the 2023 General Assembly session, the Legislature passed S.B. 540,[1] which had an effective date of October 1, 2023.  Ex. 1.  As stated in S.B. 540's purpose paragraph, the law authorized "the Attorney General to investigate, prosecute, and remediate certain civil rights violations under certain circumstances and in a certain manner[.]"  Ex. 1; State Gov't § 20-1041(a) ("The Attorney General may investigate, prosecute, and remediate, on behalf of the residents of the State, any conduct that constitutes a civil rights violation.").  The Attorney General is also authorized, after a finding of "reasonable cause" that a person is engaged in unlawful discrimination, to "commence a civil action in accordance with this part."  State Gov't § 20-1042(a).  Any such civil action is restricted by a three-year statute of limitations and civil penalties are limited to $10,000 for the first violation and $35,000 for any subsequent violations.  State Gov't §§ 20-1043; 20-1046(b).

In support of passage of S.B. 540, AG Brown testified before the Senate's Judicial Proceedings Committee ("JPR") that this bill would not provide the Maryland Attorney General with "novel" authority, but instead represented the adoption of a "recognized best practice throughout the United States[.]"  Attorney General Brown JPR Testimony, February 28, 2023 at 10:20.[2]  At least 21 other states had established civil rights authority

---

[1] S.B. 540 is also known as Chapter Law 629 after being signed by the Governor on May 16, 2023.  Ex. 1.

[2]
https://mgaleg.maryland.gov/mgawebsite/Committees/Media/false?cmte=jpr&ys=2023RS&clip=JPR_2_28_2023_meeting_1&billNumber=sb0540 (last visited July 31, 2025).

in the state Attorneys General's offices, and this power was similarly modeled on federal law, where the Civil Rights Division in the federal Department of Justice worked concurrently with the U.S. Equal Employment Opportunity Commission ("EEOC") and U.S. Department of Housing and Urban Development ("HUD") to conduct similar investigations, prosecutions, and remediations for decades.[3]  Attorney General Brown JPR Testimony, February 28, 2023 at 10:30.  AG Brown also explained that the provisions of S.B. 540 were similar to other parts of state law, such as Maryland's long existing consumer protection law within the Commercial Law Article, which empowered the Attorney General to investigate and root out violations of consumer fraud.[4]  Attorney General Brown JPR Testimony, February 28, 2023 at 7:45.

With passage of S.B. 540, § 20-1044 of the State Government Article now states:

(A)    Before initiating a civil action, the Office of the Attorney General *shall* conduct a preliminary investigation to determine whether there is reasonable cause to believe that any person committed a civil rights violation.

(B)    Before any examination, investigation, or hearing, the Office of the Attorney General may:

(1)    Subpoena witnesses;

(2)    Administer Oaths;

(3)    Examine individual under oath; and

---

[3]

https://mgaleg.maryland.gov/mgawebsite/Committees/Media/false?cmte=jpr&ys=2023RS&clip=JPR_2_28_2023_meeting_1&billNumber=sb0540 (last visited July 31, 2025).

[4]

https://mgaleg.maryland.gov/mgawebsite/Committees/Media/false?cmte=jpr&ys=2023RS&clip=JPR_2_28_2023_meeting_1&billNumber=sb0540 (last visited July 31, 2025).

>    (4)    Compel production of records, books, papers, contracts, and other documents.

Ex. 1. (emphasis added).

The clear function of the subpoena authority in the Subpoena Statute is to permit Civil Rights to complete, in an efficient manner, the required preliminary investigation before bringing a lawsuit for a civil rights violation.  Ex. 1.

Maryland's Consumer Protection Act also empowers the Attorney General, through the Division of Consumer Protection, to investigate allegations of unfair and deceptive trade practices.  Md. Code Ann., Com. Law §§ 13-101; 13-303 (LexisNexis 2013).  Section 13-405 of the Commercial Law Article, which went into effect on July 1, 1975, similarly permits subpoenas and the production of documents as part of the Attorney General's investigation:

>    (a)    In the course of any examination, investigation, or hearing conducted by him, the Attorney General may subpoena witnesses, administer oaths, examine an individual under oath, and compel production of records, books, papers, contracts, and other documents.

Com. Law §§ 13-405(a).

Maryland's Security Act likewise permits the Securities Commissioner or a designated officer to investigate violations of the Security Act.  Md. Code Ann., Corps. & Assn's § 11-701 (LexisNexis 2014).   To conduct this investigation, the office may "subpoena witnesses . . . , take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which the Commissioner considered relevant or material to the inquiry."  Corps. & Ass'ns § 11-701(b).

**Bay Management's Complaint**

Bay Management alleges that on or about December 3, 2024, Civil Rights served a subpoena pursuant to the Subpoena Statute.  Compl. ¶ 12.  A copy of the subpoena was attached as Exhibit A to Bay Management's Complaint.  Compl. Ex. A.  Bay Management's 20 pages of allegations in its complaint can be summarized as follows: Defendants "improperly, unlawfully, and maliciously issue[d] the Subpoena as part of a fishing expedition, without possessing any actual evidence of a civil rights violation committed . . ., as part of an effort to 'find' some wrongdoing . . . to use as leverage[.]"  Compl. ¶ 2.

The subpoena seeks documents related to: (1) policies, practices, and procedures regarding criminal backgrounds checks in rental or leasing of housing; (2) policies, practices, procedures regarding applicants who received rental assistance; (3) communications with entities conducting background checks of applicants; (4) rental applications submitted by persons with a criminal record; (5) rental applications submitted by persons using rental assistance; (6) how policies, practices, and procedures were developed regarding use of criminal background checks and rental assistance; and (7) identifying decision makers reviewing applicants for rental or leasing of housing.  Compl. Ex. A.  The subpoena's final instruction states that Bay Management is "encouraged to contract [Marquel] Melton promptly regarding any questions or concerns to ensure efficiency and to eliminate any unnecessary burdens of production or review of the documents."  Compl. Ex. A.  Each of the seven document requests are limited to the period of the "the last three (3) years" from the issue date of the Subpoena.  Compl. Ex. A.

The complaint includes six counts: (1) Declaratory Judgment – U.S.C. §§ 2201-2202; Federal Rule of Civil Procedure 57; (2) Deprivation of Due Process – U.S. Const. Amend. V and XIV; (3) Article 24 of the Maryland Declaration of Rights – Due Process; (4) Abuse of Process; (5) Injunctive Relief – Federal Rules of Civil Procedure 65 – Invalid Subpoena; (6) Injunctive Relief – Federal Rules of Civil Procedure 65 – Indefinite and Overboard Subpoena.  Compl. ¶¶ 36-81.

In support of Count One,[5] Count Two, and Count Three, Bay Management alleges that "[t]he Subpoena Statute is plainly unconstitutional because there are no standards to prevent arbitrary and discriminatory enforcement [of] subpoenas issues under this statute." Compl. ¶ 39.  While Bay Management brings a facial challenge under these three counts, in Count One, in the alterative, Bay Management also alleges an as applied challenge, that Defendants' conduct "proves it issue[d] the Subpoena without any evidentiary and substantive basis in order to see what it could find."  Compl. ¶ 45.  Bay Management alleges, in support of this as applied challenge, that Defendants shifted its rationale for the basis of its investigation and provided Plaintiff with a settlement demand, as an alleged attempt to strong arm Bay Management.[6]  Compl. ¶¶ 19-34.

In support of Count Four, Bay Management avers that Defendants "willfully abused its statutory investigatory powers authorized in the Subpoena Statute for an illegal purpose

---

[5] In Count One, Bay Management seeks a declaratory judgment under the Declaratory Judgment Act.

[6] As discussed further below, none of these facts are relevant to the analysis of the Motion.

by issuing the Subpoena to coerce a private business to changes its legal business practices to conform to Defendants' policy preference and political initiatives."  Compl. ¶ 64. According to Plaintiff, this attempt to make it conform was its "ulterior motive" to issue the subpoena.  Compl. ¶ 67.  As it does throughout its complaint, Bay Management again claims that, "[a]t the time it issues the Subpoena, Defendants lacked a good faith basis to believe that [Plaintiff] had committed a civil rights violation."  Compl. ¶ 66.  In support of its damages claim, Bay Management only states generally that it "has suffered damages . . . by having to defend against the Subpoena[.]"  Compl. ¶ 68.

Finally, Bay Management does not bring standalone claims[7] under its Count Five and Count Six, but instead seeks injunctive relief declaring that the subpoena is unconstitutional, overly broad and unduly burdensome, and enjoining Defendants from enforcing the subpoena.  Compl. ¶¶ 69-81.

## ARGUMENT

### I.  STANDARD OF REVIEW.

#### A.  Rule 12(b)(1).

The Court reviews assertions of Eleventh Amendment immunity under Rule 12(b)(1), as a challenge to subject matter jurisdiction.  *See Verizon Md. Inc. v. RCN Telecom Servs., Inc.*, 232 F. Supp. 2d 539, 546 (D. Md. 2002) (quoting *Pennhurst State*

---

[7] As Count Five and Count Six are not standalone claims, but instead a request for specific injunctive relief, Defendants' opposition to Plaintiff's motion for preliminary injunction addresses this request for relief.  To the extent the Court disagrees that these are standalone claims, Defendants respectfully reserve the right to file a dispositive motion seek dismissal of Count Five and Count Six.

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)) ("Because 'the principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art[icle] III,' it would seem to limit the extent of a federal court's subject-matter jurisdiction."), *aff'd in part, dismissed in part sub nom. Verizon Md., Inc. v. Global NAPS, Inc.*, 377 F.3d 355 (4th Cir. 2004).  Defendants may challenge subject matter jurisdiction under Rule 12(b)(1) in two ways: facial and factual challenges.  *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  In a facial challenge such as this one,[8] the defendant alleges that the complaint, accepted as true, fails to state sufficient facts on which plaintiff can base subject matter jurisdiction.  *Id.*

B. **Rule 12(b)(6).**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  Although this Court is required to "take the facts in the light most favorable to the plaintiff," it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (citation omitted).  Nor may this Court credit "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

---

[8] Although there is an as applied challenge here as well, the Court can make its determination that even assuming the facts as alleged are true, there is not subject matter jurisdiction.

"Generally, on a Rule 12(b)(6) motion the court considers not only the complaint, but also any exhibits actually attached or referred to as part of the complaint." *Mitchell v. Henderson*, 128 F. Supp. 2d 298, 301 (D. Md. 2001). "[T]he exhibits to the complaint are a part of the complaint," and "in the event of conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc*., 936 F.2d 1462, 1465 (4th Cir. 1991) (citing Fed. R. Civ. P. 10(c)). "[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint,'" without converting the motion into one for summary judgment as provided in Rule 12(d), if the document "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *American Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc*., 190 F.3d 609, 618 (4th Cir. 1999)). Moreover, a court may take judicial notice of recordings and documents related to a Maryland act's legislative history as these are available to the public via the website of the Maryland General Assembly. *See Just Puppies, Inc. v. Frosh*, 565 F. Supp. 3d 665, 704 (D. Md. 2021), *aff'd sub nom. Just Puppies, Inc. v. Brown*, 123 F.4th 652 (4th Cir. 2024).

## II.    SOVEREIGN IMMUNITY BARS MOST OF PLAINTIFF'S CLAIMS.

Upon the formation of the United States, the States retained their status as sovereign entities and thereby retained their immunity from suit. *Alden v. Maine*, 527 U.S. 706, 713

(1999).    "The Eleventh Amendment[9] immunizes states, state agencies, state instrumentalities, and state officials sued in their official capacities from suit by private parties in federal court." *MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n*, 487 F. Supp. 3d 364, 372 (D. Md. 2020) (internal citations omitted).  Under the Eleventh Amendment, a state's immunity from suit limits federal court jurisdiction.  *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64 (2001).  Sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action.  *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (internal quotation omitted), *cert. denied*, 139 S. Ct. 417 (2018).

Defendants "bear[] the burden of demonstrating" sovereign immunity because it is "akin to an affirmative defense."  *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).  There is no factual dispute that Civil Rights is an instrumentality of the State and that AG Brown is a government official, whom Plaintiff sues in his official capacity.  Compl. ¶¶ 5, 6.

### A.    Defendants are Immune from Suit in Federal Court for Most of Plaintiff's Federal Claims and Injunctive Relief.

The first two counts of the complaint allege that the Subpoena Statute is unconstitutionally vague and that Bay Management has been deprived of due process, respectively.  Both claims are brought under the Fifth and Fourteenth Amendments and are

---

[9] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

alleged against both the Civil Rights and AG Brown. These claims against the Civil Rights, an instrumentality of the state, must be dismissed, as sovereign immunity bars actions against the state and its agencies and instrumentalities in federal court. *MediGrow, LLC*, 487 F. Supp. 3d at 373 (holding there is no *Ex Parte Young* exception to sovereign immunity for the state and its instrumentalities); *Northern Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189, 193 (2006) (explaining that "arms of the State possess immunity from suits authorized by federal law"). Additionally, Count Five and Count Six, which seek injunctive relief against Defendants are similarly barred against the Civil Rights. *MediGrow, LLC*, 487 F. Supp. 3d at 373; *Northern Ins. Co. of N.Y.,* 547 U.S. at 193.

Count Two and Count Four seek monetary damages from Defendants due to the alleged violation of Plaintiff's due process rights and the tort of abuse of process. Compl. ¶¶ 58, 68. The Eleventh Amendment also bars such monetary relief. *See, e.g.*, *MediGrow, LLC*, 487 F. Supp. 3d at 373. As a result, Count Two and Count Four, brought against Civil Rights and AG Brown, require dismissal. *Id.*

### B. Defendants are Immune from Suit in Federal Court for Plaintiff's Maryland Claims.

Although plaintiffs may seek prospective injunctive relief against a state official acting in his official capacity, *Just Puppies v. Frosh*, 438 F. Supp. 3d 448, 483 (D. Md. 2020), *vacated and remanded on other grounds*, *Just Puppies, Inc. v. Frosh*, 2021 WL 4452349 (4th Cir. Apr. 29, 2021), they may only do so to prevent an ongoing violation of federal law, not with respect to alleged violations of state law, *see Bragg v. West Va. Coal*

*Ass'n*, 248 F.3d 275, 296-97 (4th Cir. 2001); *Pennhurst State Sch. & Hosp.*, 465 U.S. at

106 (concluding that *Ex parte Young* is "inapplicable in a suit against state officials on the

basis of state law").   Because Plaintiff bases numerous claims on alleged violations of

Maryland law, including the Maryland Constitution, this Court does not have jurisdiction

to hear Plaintiff's claims of violations of due process rights under Md. Dec. Rights art. 24

(Count Three: Compl. ¶¶ 59-62) and the common law tort of abuse of process (Count Four:

Compl. ¶¶ 63-68).   Thus, Bay Management improperly brings these claims before the Court

and the Court should dismiss Count Three and Count Four in their entirety.

### C.    Plaintiff Cannot Meet its Burden to Demonstrate an Exception to Sovereign Immunity Applies to Most of its Claims.

Having demonstrated that Eleventh Amendment immunity applies, "the burden to

prove that immunity has been abrogated or waived" falls to Plaintiff.   *Williams v. Big*

*Picture Loans, LLC*, 929 F.3d 170, 177 (4th Cir. 2019).   There are three exceptions to

sovereign immunity.   First, a state may waive its sovereign immunity and consent to suit

in federal court.   *Green v. Mansour*, 474 U.S. 64, 68 (1985).   Maryland has not.   *See* State

Gov't § 12-103; *see also Dyer v. Maryland State Bd. of Educ.*, 187 F. Supp. 3d 599, 611

(D. Md. 2016), *aff'd*, 685 F. App'x 261 (4th Cir. 2017) (noting that Maryland has explicitly

declined to extend its tort claims waiver to torts brought in federal court).

Second, Congress may choose to abrogate a state's Eleventh Amendment immunity

under a particular federal statute.   *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44,

55-56 (1996).   Congress has not done so with any of the applicable statutes at issue in this

suit.   *See, e.g.*, *Pevia v. Hogan*, 443 F. Supp. 3d 612, 631 (D. Md. 2020) (original citation

omitted) (explaining that sovereign immunity has not been congressionally abrogated for claims under § 1983); *Edokobi v. Grimm*, No. GJH-19-905, 2020 WL 1063064, at *8 (D. Md. Mar. 4, 2020), *aff'd*, 837 F. App'x 237 (4th Cir. 2021) (holding that when a plaintiff cites no statutory basis for a due process violation of the Fifth Amendment, a waiver cannot be implied); *Goldstein v. Moatz*, 364 F.3d 205, 219 (4th Cir. 2004) ("If a declaratory judgment proceeding actually constitutes a suit against the sovereign, it is barred absent a waiver of sovereign immunity.").

The third exception is that, per *Ex Parte Young*, 209 U.S. 123 (1908), sovereign immunity does not bar suits against officials seeking relief against an ongoing or prospective violation. "Under the *Ex Parte Young* exception, private litigants may sue state officials for injunctive relief or seek a declaratory judgment, so long as the relief sought is prospective in nature and remedies an ongoing harm." *MediGrow*, 487 F. Supp. 3d at 372-73. As noted above, the *Ex Parte Young* exception does not apply to claims against instrumentalities of the State. *Id.* at 373. Additionally, it is also well-established that there is no *Ex Parte Young* exception for state officials sued on the basis of state law. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106 (concluding that *Ex parte Young* is "inapplicable in a suit against state officials on the basis of state law"). Therefore, Plaintiff's only claim that survives dismissal on sovereign immunity grounds is its claim against AG Brown under Count One, alleging that the Subpoena Statute is unconstitutional vague under federal law and seeking a declaratory judgment. *Just Puppies, Inc.*, 438 F. Supp. 3d at 483 (holding that plaintiffs may seek prospective injunctive relief against a state official acting in their official capacity when the claim is brought under federal and not state law).

14

III.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM

    A.    **Plaintiff's Vagueness and Due Process Claims Fail to State a Claim**

A statute is unconstitutionally vague when it (1) does not give a "person of ordinary intelligence" notice of what conduct is prohibited, or (2) does not provide sufficient standards for those who apply the law, thereby allowing for "arbitrary and discriminatory enforcement." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Here, Bay Management alleges that the Subpoena Statute is facial invalid because it is without standards, thus, creating arbitrary and discriminatory enforcement. Compl. ¶¶ 39-44; 52-56; 59-62. Such facial challenges are "the most difficult challenge to mount successfully, since the challenge must establish that no set of circumstances exists under which the Act would be valid." *U.S. v. Salerno*, 481 U.S. 739, 745 (1987). Facial claims are "disfavored" because such claims "often rest on speculation[,]" "run contrary to the fundamental principle of judicial restraint[,]" and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008).

The court should seek "an interpretation which supports the constitutionality of legislation." *United States v. Nat'l Diary Prods. Corp.*, 372 U.S. 29, 32 (1963); *United States v. Bollinger*, 798 F.3d 201, 207 (4th Cir. 2015) (stating that every statute is presumed to be constitutional). The Fourth Circuit has further explained that legislators are not held "to an unattainable standard when evaluating enactments in the face of vagueness

challenges." *Wag More Dogs Liab. Corp.*, 680 F.3d at 371. Importantly, the wisdom of the legislature's decision is not relevant in whether a statute is unconstitutional. *Guardian Plans v. Teague*, 870 F.2d 123, 126 (4th Cir. 1989). "'[I]t is for the legislature, not the courts, to balance the advantages and disadvantages of [a law]." *Id.* (quoting *Williams v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487 (1955). Plaintiff therefore cannot rely on the Due Process Clause to strike down state laws for being unwise; "the people must resort to the polls, not the courts." *Guardian Plans*, 870 F.2d at 126 (quoting *Lee Optical*, 348 U.S. at 488).

Courts recognize that words cannot provide the mathematical certainty needed to deal with all the factual circumstances that might fall under the statute. *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952). Therefore, only a "reasonable degree of certainty can be demanded" from the language of a statute. *Id.* In meeting the "reasonable certainty" standard, statutes may use "ordinary terms" that are adequately interpreted using "common usage and understanding." *Id.* at 340 (quoting *Sproles v. Binford*, 284 U.S. 374, 393 (1932)). A statute will not be deemed unconstitutionally vague merely because "'imagination can conjure up hypothetical cases'" where the meaning would be less clear. *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (quoting *American Commc'ns Ass'n v. Douds*, 339 U.S. 382, 412 (1950)).

Generally, courts tolerate more vagueness for statutes with civil penalties rather than criminal penalties because the consequences of having less certainty are not as severe. *Hoffman Estates v. Flipside*, 455 U.S. 489, 499 (1982). Furthermore, a "more stringent vagueness test" only applies when the statute may harm constitutionally protected rights,

such as freedom of speech. *Id.* at 499. As the Subpoena Statute does not harm constitutionally protected rights, as there is no constitutional right to commit a civil rights violation, and is subject to enforcement only by civil penalties, the Court should tolerate more vagueness here.

Given the above, Bay Management must show that the Subpoena Statute is "impermissibly vague in all of its applications" to demonstrate a facial challenge and survive dismissal. *Flipside*, 455 U.S. at 497. Yet, nowhere in its complaint, does Bay Management allege facts to plead that the Subpoena Statute is invalid under every set of possible circumstances. While Bay Management states, in a conclusory fashion, that "there are no set of circumstances under which the Subpoena Statue would be constitutional in its current form[,]" Compl. ¶ 44, there is nothing in the way of factual support to buttress this claim. Instead, Bay Management attempts to resuscitate an old legal theory requiring Defendants to "possess a reasonable belief, or any reason at all to believe, that the recipient of an administrative subpoena (here, [Bay Management]) has committed a single violation of Maryland or federal law, or a legitimate, good-faith belief that the information sought in an administrative subpoena would lead to discovery of evidence of a civil rights violation." Compl. ¶ 53.

While the legal standard prior to the New Deal era, both the Supreme Court of the United States and the Supreme Court of Maryland have had a significant change in "attitude" on the "matter of subpoenas on behalf of administrative agencies." *Equitable Trust Co. v. State Comm'n on Hum. Rts.*, 287 Md. 80, 89-93 (1980) (summarizing cases). The sea-change in attitude is exemplified by *Oklahoma Press Publishing Company v.*

*Walling*, which held "that such subpoenas need not be supported by probable cause but that their validity is to be measured by a three-fold test." *Equitable Trust Co.*, 287 Md. at 91-92 (citing to *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 208 (1946)). Today, the Maryland Supreme Court recognizes this three-fold test for the validity of an administrative subpoena as: whether the inquiry is authorized by statute, the information sought is relevant to the inquiry, and the demand is not too indefinite or overboard. *Washington Home Remodelers, Inc. v. State, Off. of Att'y Gen., Consumer Prot. Div.*, 426 Md. 613, 623 (2012) (citing to *Oklahoma Press Publ'g Co.*, 327 U.S. at 208). Indeed, the Supreme Court of Maryland characterized *Oklahoma Press Publ'g Co.* as a demonstration that its federal counterpart's "views towards administrative 'fishing expeditions' had mellowed somewhat." *Id.*

By 1976, the Supreme Court of Maryland[10] explained that it is "well settled" that the General Assembly "may validly confer upon administrative agencies such as the Human Relations Commission[11] the power to compel production of information for purposes of preliminary investigation[s.]" *Banach v. State Comm'n on Hum. Rts.*, 277 Md.

---

[10] The federal government has interpreted its administrative subpoenas similarly, noting that "[w]ithout sufficient investigatory powers, including some authority to issue administrative subpoena requests, federal governmental entities would be unable to fulfill their statutorily imposed responsibility to implement regulatory or fiscal policies." *Report to Congress on the Use of Administrative Subpona Authorities by Executive Branch Agencies and Entities*, U.S. DEPARTMENT OF JUSTICE, https://www.justice.gov/archive/olp/rpt_to_congress.htm#f3 (last visited August 14, 2025).

[11] The Human Relations Commission is the precursor to the Maryland Commission on Civil Rights ("MCCR"), the Maryland state equivalent of the EEOC. State Gov't §§ 20-201; 20-207.

502, 507 (1979). In *Banach*, the Maryland Supreme Court rejected the argument that the Commission's "subpoena power [wa]s limited to the post-complaint investigation and hearing stages[.]" *Id.* at 509. Quoting the "unanimous" United States Supreme Court, the Maryland Supreme Court stated that the Commission had the "power of inquisition" which was "more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id.* at 512 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950)). Like the Subpoena Statute at issue here, the Commission's statute in *Banach* required a preliminary investigation to satisfy the reliability of the information, attempting to "insure [sic] no potential respondent would ever be subjected to a [C]ommission complaint without a 'preliminary investigation.'" *Id.* (quotations in original). In summary, the Court concluded "the Legislature undoubtedly recognized that discrimination, in its many forms, is frequently practiced in a subtle manner. Without the right to compel production of evidence, the [C]ommission's power to investigate unlawful discriminatory practices would be reduced to a meaningless gesture." *Id.*

The Maryland Supreme Court has likewise upheld the statutory authority of the equivalent consumer protection law, explaining that the Consumer Protection Division, within the Office of the Attorney General, includes:

> the power to receive and investigate consumer complaints, initiate its own investigation of any possibly unfair and deceptive trade practice, issue cease and desist orders, adopt rules and regulations which further define unfair or deceptive trade practices or otherwise effectuate the purposes of the Act, and seek a temporary or permanent injunction in a civil enforcement proceeding.

*Consumer Prot. Div. Off. of Atty. Gen. v. Consumer Pub. Co.*, 304 Md. 731, 745 (1985). "In sum, the Consumer Protection Division functions as a civil prosecutor." *Id.* at 746. The Appellate Court of Maryland also recognized the same power for the Securities Commissioner. *Scheck v. Maryland Sec. Comm'r*, 101 Md. App. 390, 394 (1994).

As there is no requirement under Maryland law that Defendants must demonstrate a good-faith basis for its preliminary investigation and resulting subpoena, and as Bay Management fails to allege facts showing that there is no possible constitutionally permitted applications of the Subpoena Statute, Plaintiff's facial vagueness and due process claims must be dismissed. Like the Consumer Protection Division, Civil Rights is a "civil prosecutor" empowered to investigate and obtain documents to determine if civil rights violations have or are occurring. *Consumer Prot. Div. Off. of Atty. Gen.*, 304 Md. at 746. Both statutes permit divisions of the OAG to investigate violations of their respective subject matters, without the need to show good cause, good-faith or reasonable cause prior to issuance. State Gov't § 20-1044; Com. Law §§ 13-405(a). As the *Banach* Court explained, any investigation may be initiated "merely on suspicion" of a violation or for "assurance" that no violation exists. 277 Md. at 512 (quoting *Morton Salt Co.*, 338 U.S. at 642-43). Bay Management is therefore unable to provide any legal support for its contention that Civil Rights must first demonstrate some level of good cause[12] prior to

---

[12] Like the argument that good cause is required, much of Plaintiff's argument that the Subpoena Statute is vague is based on conclusory allegations not supported by well-pled facts. *Innovations Surgery Ctr., P.C. v. United Healthcare Ins. Co.*, 722 F. Supp. 3d 582, 589 (D. Md. 2024) (quoting *Iqbal*, 556 U.S. at 686). These conclusory allegations, and similar legal conclusions without factual support, should be ignored by this Court as

initiating its investigation.  Thus, its entire complaint is predicated on an outdated, pre-New Deal era reading of the law, which requires dismissal.

Further, Bay Management provides no factual support to its conclusory allegation, which the Court should not accept, that there is no possible constitutionally permitted applications of the Subpoena Statute.  Instead, one can imagine numerous scenarios in which the Subpoena Statute can be constitutionally applied given this legal background, including, Civil Rights receiving a tip from applicants that a residential property management company may be unlawfully taking into account criminal background.  From there Civil Rights is permitted to begin its preliminary investigation, by subpoenaing and requesting documents, to determine if there is merit to the initial information provided to its office.  Then, finally, after Civil Rights is satisfied there is reasonable cause[13] to believe a violation has occurred, it is permitted to file a civil action against a private party to stem discriminatory actions.  State Gov't § 20-1042(a).

---

part of its dismissal analysis.  *Innovations Surgery Ctr., P.C.*, 722 F. Supp. 3d at 589 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[13] In direct contrast to Bay Management's allegations of arbitrary and discriminatory enforcement, the Subpoena Statute provides greater due process protections than would be permitted in the normal course of litigation.  Pursuant to the Subpoena Statute, the Attorney General may only file a civil action after they are satisfied that there is a reasonable cause for civil rights violations.  State Gov't § 20-1042(a).  Whereas in the normal course of litigation, a party may file a suit, and request thereafter discovery, without any need to show reasonable cause for its suit.  While lawsuits are expected to not be frivolous, under Federal Rule of Civil Procedure 11(b), unlike any potential action under the Subpoena Statue, there is no requirement to show reasonable cause, thus providing higher level of substantive due process.

Plaintiff also brings an as applied challenge to the Subpoena Statute, alleging that the subpoena is invalid, because by Defendants' "own conduct . . . proves that it issued the Subpoena without any evidentiary and substantive basis in order to see what it could find." Compl. ¶ 45.  As noted at length above, Bay Management's legal basis for this claim, that Defendants are required to show evidentiary or a substantive basis for the subpoena, is without merit, dooming this as applied claim.  *Banach*, 277 Md. at 512.  However, assuming this alone is not fatal to its claim, Plaintiff's as applied challenge requires this Court to "consider whether [the law] is vague as applied to the particular facts at issue" and not speculate whether the law could be vague "as applied to the conduct of others." *United States v. Hasson*, 26 F.4th 610, 616 (4th Cir. 2022).  Bay Management does not, and cannot, argue that it is unaware that anti-discrimination laws exist[14] at the federal and state level, and instead alleges that the Subpoena Statute is being arbitrarily enforced against it in violation of due process.  However, Plaintiff ignores the due process protections[15] in place in the other subsections of the Subpoena Statute.  Most importantly, prior to the OAG's filing of a civil action, OAG must have a belief that there is reasonable cause for such an action, based on the preliminary investigation.  State Gov't § 20-1042(a).

---

[14] In fact, as conceded by the complaint, Plaintiff is aware this investigation stems from Civil Rights' concerns that Bay Management engaged in race-based discrimination by excluding housing from persons with a criminal record.  Compl. ¶ 21.  Thus, Plaintiff's complaint is self-contradictory.

[15] Moreover, Plaintiff ignores that the subpoena can only be enforced by a civil action in a Maryland Circuit Court, which would provide it with substantial due process. *Banach*, 277 Md. at 505.  Thus, in addition to this suit, it is clear that Plaintiff is not without a forum to raise their concerns about the subpoena at issue here.

This ensures that Civil Rights can only bring those claims that are justified by reasonable cause.

Plaintiff also fails to sufficiently allege a violation of the threefold *Oklahoma Press Publ'g Co.* test for the validity of a subpoena issued by an administrative agency: (1) whether the inquiry is authorized by statute; (2) whether the information sought is relevant to the inquiry; and (3) whether the demand is too indefinite or overbroad. *Banach*, 277 Md. at 506 (citing *Okla. Press Pub. Co. V. Walling*, 327 U.S. at 208); *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019) (finding a statute criminalizing "habitual drunkards" void for vagueness). As detailed above, given the clear language of the statute, Defendants were authorized to issue the subpoena. State Gov't § 20-1044. The relevancy requirement, in the administrative subpoena context, is "'generously construed'" and covers "'virtually any material that might cast light on the allegations[.]'" *EEOC. v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 113 (4th Cir. 1997) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 69 (1983)). Further, courts "determine relevancy 'in terms of the investigation' rather than 'in terms of evidentiary relevance.'" *Id.* (internal quotations and citations omitted). Here, each of the document requests in the subpoena focused on material that might cast light on Bay Management's use of criminal background checks, criminal records of applicants, and use of rental assistance. Compl. Ex. A. And as noted previously, Bay Management conceded in its complaint that this was the basis for the subpoena and preliminary investigation. Compl. ¶ 21. Therefore, Bay Management has failed to allege sufficient facts stating the requests are irrelevant to this conceded subject matter.

Finally, Bay Management has not sufficiently alleged that the subpoena is overboard and unduly burdensome.  Importantly, in its complaint, Bay Management has already conceded to have produced a number of documents requested by the subpoena and that the subpoena is limited to three years' worth of documents.  Compl. ¶ 25; Ex. A.  In analyzing the issue of whether a request is too indefinite, the Maryland Supreme Court has held that "the mere circumstance that compliance with the requirements of the subpoena will be expensive and will interfere with the conduct of respondent's business does not in itself often afford a basis for refusal to enforce the subpoena."  *Equitable Trust Co.*, 287 Md. at 93.  Similarly, the Fourth Circuit has made clear that the "burden of proving that an administrative subpoena is burdensome is" on the party resisting production, is "not easily met," and requires a showing of reliable evidence, including that production is "unduly burdensome in light of the company's normal operating costs," or would "threaten" or "seriously disrupt" its "normal business operations."  *EEOC v. Randstad*, 685 F.3d 433, 451-52 (4th Cir. 2012); *see also EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 475 (4th Cir. 1986) (holding that the mere fact that it would cost the business $75,000 to respond to the EEOC's subpoena did not establish that the subpoena was unduly burdensome).  Thus, Bay Management's claims that the remainder of the production would require some 100,000 individual documents and hundreds of hours of work, are insufficient to meet the high hurdle of demonstrating that a subpoena is overly burdensome.  *Randstad*, 685 F.3d at 451-52.  Moreover, Plaintiff has failed to sufficient allege that responding to the requests is unduly burdensome in light of the company's normal operating costs.  Finally, this Court has previously permitted greater than three-year periods for discovery in discrimination-

related matters. *Proa v. NRT Mid-Atl., Inc.*, No. CV AMD-05-2157, 2008 WL 11363286, at *12 (D. Md. June 20, 2008) (recognizing that courts permit plaintiffs in employment discrimination cases a reasonable time period for discovery before the alleged discrimination occurred).

     **B.**    **Plaintiff's Tort of Abuse of Process Fails to State a Claim and Must be Dismissed.**

Plaintiff alleges that Defendants have "willfully abused" their statutory investigatory powers for an "illegal purpose by issuing the Subpoena" in an attempt to coerce a private business to conform to Defendants' policy and political preferences. Compl. ¶ 64. To sustain a cause of action for the tort of abuse of process, a plaintiff must prove: (1) that the defendant willfully used process after it had been issued in a manner not contemplated by law; (2) that the defendant acted to satisfy an ulterior motive; and (3) that damages resulted from the defendant's perverted use of process. *Lilly v. Baltimore Police Department*, 694 F.Supp.3d 569, 593 (4th Cir. 2023) (citations omitted). "Additionally, Maryland law requires a plaintiff to allege an unlawful arrest or seizure of property to support the damages element of an abuse of process claim." *Id.* (citing *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 45-436 (1997)). This Court has noted that the "archetypal abuse of process claim arises from the use of criminal process to coerce an individual to pay a debt in order to avoid arrest and prosecution." *Callender v. Callender*, No. CV TDC-17-3249, 2019 WL 1980700, at *2 (D. Md. May 3, 2019) (citing *Palmer Ford, Inc. v. Wood*, 298 Md. 484, 511-12 (1984) (collecting cases)).

Significantly, Bay Management has failed to allege that Defendants have arrested its officials or seized its property. *See* Compl. This alone merits dismissal, as without it, Plaintiff has not sufficiently plead its required damages. *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 531-32 (2004) (affirming dismissal when appellant failed to allege that he had been arrested or that his property had been seized); *One Thousand Fleet*, 346 Md. at 48 (affirming dismissal when plaintiff failed to plead facts establishing legally cognizable damages of arrest or a seizure of the property).

Plaintiff's actual claims here are based on threadbare recitations of the elements, none of which are sufficient for this tort to survive dismissal. In Maryland, it is well established that "[a] bad motive alone is not sufficient[.]" *One Thousand Fleet*, 346 Md. at 38. Instead, there must be "some definite act or threat not authorized by the process, or aimed at an objection not legitimate in the use of the process[.]" *Id.* Indeed, the "'mere issuance of process itself . . . is not actionable, even if it is done with ulterior motive or bad intention.'" *Lilly*, 694 F.Supp.3d 569, 593 (quoting *Campbell*, 157 Md. App. 504, 530 (2004)). Thus, no liability under this tort can possible be incurred where the party has done nothing more than pursue a lawful subpoena regardless of how evil the motive may be. *Campbell*, 157 Md. App. at 530.

As alleged, Plaintiff brought this tort claim because they believe Defendants "lacked a good faith basis" for a civil rights violation and Defendants had an ulterior motive to force Bay Management into adopting Defendants' perfected policy and political initiatives. Compl. ¶¶ 64-67. In *Metro Media Entertainment*, this Court has explained that "[a]n abuse of process claim does not concern whether a complaint was brought, or any court process

26

was issued, in good faith or based on sufficient cause." *Metro Media Ent., LLC v. Steinruck*, 912 F. Supp. 2d 344, 351 (D. Md. 2012) (dismissing abuse of process claim based on the issuance of a subpoena). Thus, Bay Management's allegations that Defendants lacked a good faith basis for issuance of its subpoena is not relevant to this tort. Further, Bay Management mistakenly avers that the issuance itself of the subpoena is the tortuous act. This again requires dismissal, as a plaintiff cannot "maintain an action for abuse of process because there [is] no evidence of any improper use or perversion of the process *after* it issued." *Id.* (citing *One Thousand Fleet*, 346 Md. at 40) (emphasis added)) (noting that the issuance of a subpoena itself is not the basis of this tort action).

Even if this Court construed Bay Management's complaint to mean that Defendants' settlement offer was the claimed improper use after issuance of the subpoena, the tort claim would still fail. This Court rejected the argument that an abuse of process claim could be sufficiently plead by a settlement demand, noting that while "a settlement offer is clearly outside the scope of the subpoena, the purpose of the settlement letter was not to attain some collateral objection[,]" but to instead resolve the pending legal dispute. *Metro Media Ent., LLC,* 912 F. Supp. 2d at 352 (internal citations and quotations omitted) (detailing that "there is nothing wrong with presenting a defendant with a settlement offer prior to proceeding with litigation"). A different outcome should not occur here.

## CONCLUSION

The motion to dismiss should be granted.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland


/s/ James D. Handley
JAMES D. HANDLEY
Federal Bar No. 20299
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jhandley@oag.state.md.us
(410) 576-6993
(410) 576-6995  (facsimile)

August 19, 2025                      Attorneys for Defendants